UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLADYS P.,[1]<br>      Plaintiff<br>v.<br>ANDREW M. SAUL, Commissioner of Social Security,[2]<br>      Defendant. | Case No. 5:18-cv-01120-GJS<br><br>**MEMORANDUM, OPINION, AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Gladys P. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10 and 11] and briefs addressing disputed issues in the case [Dkt. 18 ("Pl. Br."), Dkt. 22 ("Def. Br.")]. The matter is now ready for decision.

---

[1]     In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2]     Andrew M. Saul, now Commissioner of the Social Security Administration, is substituted as defendant for Nancy A. Berryhill. *See* Fed. R. Civ. P. 25(d).

For the reasons discussed below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for SSI and DIB alleging disability based primarily on whole body pain, possible cirrhosis, and depression. [Dkt. 15, Administrative Record ("AR") 43.] Plaintiff's applications were denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Dante Alegre [AR 1-6, 15-28.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 7, 2013, the alleged onset date. [AR 17.] At step two, the ALJ found that Plaintiff suffered from lumbar strain and generalized arthritis. [AR 17.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 22.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work. [AR 22.] Applying this RFC, the ALJ found at step four that Plaintiff could perform her past relevant work as a home health aide and a general clerk and thus she is not disabled. [AR 26.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.] This appeal followed.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted).

"Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.   DISCUSSION

### A.   The ALJ Properly Considered Step Two

Plaintiff asserts that the ALJ erred at step two of the sequential evaluation process by finding that she had no severe mental impairments. Plaintiff contends that she has been consistently diagnosed with depression and prescribed a variety of psychotropic medications including, Prozac, Seroquel, and Citalopram. [Dkt. 18 at 2-3.] Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment. [Dkt. 22 at 3-7.]

#### 1.   Federal Law

The Commissioner defines a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," including, inter alia: "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with

changes in a routine work setting." 20 C.F.R. § 404.1522. "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis added) (citations and internal quotation marks omitted). Step two "is a *de minimis* screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted). The claimant bears the burden of proof at step two. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). Significantly, the Ninth Circuit has determined that "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993). In other words, a medical diagnosis alone does not make an impairment qualify as "severe."

### 2. Analysis

In this case, the ALJ made extensive findings to support his determination that Plaintiff's mental impairments were not severe. First, the ALJ gave "great weight" to the opinions of consultative physician, Earbin Stanicell, M.D., Board Certified in psychiatry, who conducted a complete consultative psychiatric evaluation of Plaintiff and the State Agency medical consultants who reviewed Plaintiff's medical records. These physicians concluded that Plaintiff's mental impairments were not severe. [AR 22.] In weighing this evidence, the ALJ found that the consultative psychiatrist examined Plaintiff personally, and his assessment was consistent with the longitudinal record. [AR 22.] Similarly, the ALJ noted that the State Agency medical consultants' opinions were consistent with the opinion of Dr. Stanicell and there was nothing in the record to contradict their collective findings that Plaintiff lacked a severe mental impairment. The ALJ found that their assessments were supported by the record and other evidence demonstrating that

Plaintiff's mental impairments caused no more than a mild limitation. AR 22.

Second, the ALJ gave detailed consideration to the four functional areas known as the "paragraph B" criteria. AR 20-21. In the first functional area examining Plaintiff's ability to understand, remember, or apply information, the ALJ found no limitation. The ALJ found that throughout the record, Plaintiff was noted to be alert and oriented with an adequate fund of knowledge. [AR 20.] In the second area, social functioning, the ALJ found Plaintiff had no limitation. [AR 21.] The ALJ explained that Plaintiff's relationship with her family is okay, she grocery shops and goes to church, and she had no difficulty interacting with clinical staff or the consultative examiner. [AR 21.] In the third functional area—concentration, persistence, or pace—the ALJ found Plaintiff had a mild limitation. [AR 21.] The ALJ noted that Plaintiff's ability to concentrate was diminished by her "brain fog" stemming from her depression. However, her thought processes were linear and goal directed, she was able to perform serial threes and serial sevens and she could spell the word "world" forwards and backwards. Further, during the hearing, Plaintiff did not demonstrate any difficulty with understanding and she was able to respond to questions appropriately and without delay. [AR 21.] In the last area, adapting and managing oneself, the ALJ found Plaintiff experienced a mild limitation because she had difficulty sleeping, crying spells, and intermittent suicidal ideations. However, she had no problems with self-care, she could manage money and she was able to maintain relationships with family and friends. Accordingly, because Plaintiff's mental impairments caused no more than "mild" limitation in any area, the ALJ determined her mental impairments were not severe. [AR 21.]

Plaintiff takes issue with the ALJ's reliance on the "outdated" opinions of the state agency reviewing physicians and the psychiatric consultative examiner Dr. Stanciell because those opinions, provided in 2014, predate the clear worsening of her mental impairments demonstrated in 2016. [Dkt. 18 at 3.] According to

Plaintiff, the ALJ should have focused on her 2016 medical records which show frequent abnormal mental status examination findings and suicidal ideation.

The ALJ did not err in relying on the 2014 psychiatric opinions for two reasons. First, Plaintiff's symptoms, found to be mild, were consistent throughout the record. For example, Plaintiff points to her "recent suicidal ideation in 2016" and her more recent medical appointments where she was found to have a sad, depressed, lethargic or slow affect as evidence that her depression worsened. [Dkt. 18 at 3; AR 443.] However, the findings from Dr. Stanciell's 2014 consultative examination included a review of Plaintiff's "episodic suicidal thoughts" and her "depressed and tearful mood." [AR 20, 406.] Despite these objective findings, Dr. Stanicell found that Plaintiff would have no more than mild limitations due to her mental impairments. [AR 409.] Thus, the consistent symptoms of Plaintiff's depression demonstrated in both 2014 and 2016 were analyzed by Dr. Stanicell, but ultimately found to be nonsevere.

Second, in addition to evaluating the medical opinion evidence, the ALJ reviewed all of the medical evidence related to Plaintiff's mental impairments from 2016. [AR 20.] The ALJ noted that despite Plaintiff's continued struggle with depression in April, May, and June 2016, medical records from her emergency room visits in 2016 regularly noted that Plaintiff was oriented with a normal mood and affect. [AR 20, 481.] The ALJ thus looked to the overall objective medical evidence in the record when concluding that Plaintiff's mental impairment did not affect her ability to work. This was not error.

Finally, even assuming, without deciding, that the ALJ technically erred by not finding Plaintiff's mental impairments severe for the purposes of step two, such error was harmless. *See Molina*, 674 F.3d at 1111 ("we may not reverse an ALJ's decision on account of an error that is harmless"). Here, because the ALJ found other impairments to be severe at step two, he proceeded to subsequent steps of the sequential disability evaluation process. [AR 22-28.] Then, when crafting

Plaintiff's RFC, the ALJ considered the effect of all of her alleged limitations. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any error in failing to find an impairment severe at step two is harmless if the ALJ considers any resulting limitations in assessing a claimant's RFC). Accordingly, the Court finds no prejudicial error at step two.

### B. The ALJ Properly Considered the Treating Physician's Opinion

Plaintiff asserts that the ALJ improperly discounted the opinion of her treating physician, Dr. Marc Debay. [Dkt. 18 at 3-7.] The Court finds that a remand or reversal on this basis is not warranted.

#### 1. Federal Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[3]

---

[3] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over the opinions of non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claims for SSI and DIB were filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527.

7

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

### 2. Background

The record indicates that Plaintiff began treating with Dr. Debay on January 8, 2016. [AR 629.] Two months later on March 2016, Dr. Debay completed a questionnaire on Plaintiff's behalf in which he listed Plaintiff's impairments as "fibromyalgia/depression." [AR 622.] Dr. Debay assessed Plaintiff's residual functional capacity stating that Plaintiff can: occasionally lift less than 10 pounds; sit less than 2 hours total in an 8-hour workday with normal breaks; stand/walk less than 2 hours total in an 8-hour workday with normal breaks; and she can never crouch, climb stairs, or climb ladders. [AR 623.]

The ALJ addressed Dr. Debay's opinion as follows:

> This opinion is without substantial support from any objective clinical or diagnostic findings, which obviously renders this opinion less persuasive. Moreover, the opinion expressed is quite conclusory,

providing very little explanation of the evidence relied on in forming that opinion. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described above in this decision.

[AR 26.]

### 3. Analysis

As the ALJ pointed out, Dr. Debay's opinion was not persuasive because it was conclusory, without supporting explanation; not supported by objective clinical or diagnostic findings; overly reliant on Plaintiff's subjective self-reports about the extent of her limitations; and inconsistent with Plaintiff's own statements about her functional abilities to undertake daily activities. [AR 26.] These constitute specific and legitimate reasons for rejecting Dr. Debay's opinion.

First, Dr. Debay's opinion as to functional impairment was contradicted by the bulk of the other medical opinions in the record. For instance, consultative examining physician Dr. Seung Ha Lim performed an evaluation of Plaintiff on May 15, 2014. Plaintiff presented with a history of fibromyalgia, sleep apnea, restless leg syndrome, kidney infection and hypertension. [AR 415.] Dr. Lim opined that while Plaintiff's symptoms suggested fibromyalgia, Plaintiff could complete the full range of medium work. [AR 415.] In addition, the state agency medical consultants, found similar limitations, but also concluded that Plaintiff could perform the equivalent of "medium work." [AR 26.] Of the medical opinions addressing Plaintiff's impairments, three out of four of those opinions found that Plaintiff could complete medium work. [AR 25.] The ALJ legitimately concluded that Dr. Debay's opinion was an outlier among the opinion evidence, unsupported by the

other evidence in the record, and thus entitled to less weight. This was a specific and legitimate reason to discount Dr. Debay's opinion.

Second, Dr. Debay's opinion was unreliable because it was unsupported by his treatment records. [AR 26.] While Dr. Debay referred to Plaintiff's depression and fibromyalgia, these diagnoses resulted in mild findings inconsistent with the extent of limitations opined by Dr. Debay. As the ALJ explained, despite being diagnosed with fibromyalgia, Plaintiff did not establish that it was a "medically determinable" impairment (much less, that it was "severe") because it did not meet the diagnostic criteria in SSR 12-2p. [AR 18-19.] In particular, there was no evidence that other disorders that could cause the symptoms were excluded such as her generalized arthritis. In regard to tender points, the ALJ explained that the limited evidence noting some tender points was not specific, with no details about the number or location of tender points. [AR 19.] This limited evidence was also inconsistent with numerous examinations revealing no tender points. [AR 19, citing AR 336, 425.] Further, as discussed above, Plaintiff's depression resulted in no more than mild limitations. Dr. Debay's opinion that Plaintiff's non-severe impairments resulted in extreme limitations is contradicted by substantial evidence.

Relatedly, the ALJ correctly found that Dr. Debay's opinion was conclusory. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may reject a physician's opinion if it is conclusory, brief, and unsupported by the record); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ does not need to accept opinions that are conclusory, brief, and unsupported by clinical findings). The form opinion asked Dr. Debay to identify the medical findings to support his opined postural, non-postural, and environmental limitations. [AR 622-624.] Each time, Dr. Debay did not identify any medical findings to support his opinion and simply wrote "fibromyalgia and depression"—two diagnoses that do not support a total disability finding in this case.

Third, without supporting clinical and objective testing, the ALJ correctly rationalized that Dr. Debay relied quite heavily on Plaintiff's subjective self-reports regarding the extent of her symptoms and limitations. [AR 26.] An ALJ may discount a treating physician's opinion when it is based on subjective symptoms that have been discredited. *Tonapetyan*, 242 F.3d at 1149 (a treating physician's opinion based on subjective complaints of a claimant whose credibility has been discounted can be properly disregarded). The ALJ's adverse credibility findings are a proper basis for rejecting the limitations opined by Dr. Debay.

Overall, the ALJ cited specific and legitimate reasons supported by substantial evidence for rejecting Dr. Debay's treating opinion.

**C. The ALJ's Credibility Determination is Supported by at Least One Clear and Convincing Reason**

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her subjective symptoms and functional limitations. [Dkt. 18 at 7-11.]

"Where, as here, an ALJ concludes that a claimant is not malingering, and that she has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (internal citation and quotations omitted). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if she "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d at 1115 (internal citation and quotations omitted).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ provided several reasons for discounting Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's statements concerning her symptoms and functional limitations were unsupported by the objective medical evidence. [AR 24.] As discussed above, many of Plaintiff's treatment records were consistently unremarkable and reflected normal to mild findings. [AR 24, 301-306, 316-320, 648-649, 656.] While medical evidence alone is not a basis for rejecting pain testimony, it is one factor that the ALJ is permitted to consider. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Second, the ALJ noted that Plaintiff's course of treatment was conservative and routine. [AR 23.] Specifically, Plaintiff testified that her physicians stopped prescribing her medication and she used only oils, hot baths, and over-the-counter Tylenol to alleviate her pain. [AR 42-44.] Further, in the past, her treatment had consisted solely of prescription medication and topical gels. [AR 46.] An ALJ may properly rely on the fact that only routine or conservative treatment has been prescribed. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *Meanel*, 172 F.3d at 1114 (finding that plaintiff's claim that she experienced pain "approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). Thus, Plaintiff's relatively routine and conservative treatment was a specific, clear and convincing reason to discount her subjective symptom testimony.

The ALJ also discussed Plaintiff's daily activities. [AR 23.] The Court need not address whether this additional reason was valid because even assuming that it was not, any error was harmless in light of the other legally sufficient reasons for the ALJ's determination. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson*, 359 F.3d at 1197 (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: July 11, 2019

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE